**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0409-23

RIKIN MEHTA and MEHTA
FOR U.S. SENATE,

    Plaintiffs-Appellants,

v.

HIRSH SINGH and SINGH FOR
SENATE,

    Defendants-Respondents.

_____

Submitted April 30, 2025 – Decided July 1, 2025

Before Judges Currier, Marczyk, and Paganelli.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-0068-21.

Murray-Nolan Berutti LLC, attorneys for appellants (Ronald A. Berutti, on the briefs).

Hirsh Singh, respondent pro se.

PER CURIAM

The dispute between the parties arises out of a contentious political race in which the two candidates vied for the Republican nomination for New Jersey's United States Senate seat in 2020. Plaintiffs, Dr. Rikin Mehta (Mehta) and Mehta for U.S. Senate, instituted suit, alleging defendants engaged in a defamatory smear campaign against plaintiffs, including the publication of numerous allegedly false and defamatory press releases as well as the hiring of third parties to spread misinformation about plaintiffs.

Defendants moved for summary judgment. The trial court granted the motion, finding: (1) plaintiffs failed to show by clear and convincing evidence that defendants acted with actual malice in making their publications; and (2) defendants' actions were not defamatory as their publications constituted opinions and hyperbole rather than assertions of fact. We affirm.

I.

Mehta is an adjunct law professor as well as a co-founder and board member of two companies that operate in the medical resource and pharmaceutical fields. From 2008 to 2014, Mehta worked for the United States Food and Drug Administration in the compliance office. Mehta then worked for the District of Columbia Department of Health as a Senior Deputy Director. In

2015, Mehta moved to New Jersey where he switched his voter registration from Democrat to Republican.

In March 2020, Mehta filed sixteen petitions containing a total of 1,117 signatures.[1] After twelve of the signatures were rejected because the circulator of the petition was a registered Democrat, violating N.J.S.A. 19:23-11, Mehta filed more than 600 additional signatures. In April, a voter formally challenged Mehta's petitions to the Secretary of State of New Jersey, who then transmitted the matter to the Office of Administrative Law.

An Administrative Law Judge (ALJ) conducted a hearing. The petitioner-voter asserted Mehta's name was listed in two slightly different formats, requiring the invalidation of some of the signatures. The ALJ concluded there was no evidence that the variation misled voters. The ALJ also found that even if all the challenges were successful, Mehta would still have had the required signatures to obtain the nomination. Therefore, the ALJ ordered that Mehta's name be placed on the ballot. The ALJ's decision was adopted in its entirety by

---

[1] To participate in a primary election at the time of these events, an individual had to submit 1,000 valid signatures from registered voters of the same party affiliation. N.J.S.A. 19:23-8. The statute was amended in 2025 and now requires 2,500 votes.

A-0409-23

the Secretary of State. Mehta won the Republican nomination and lost in the general election in November 2020 to Democrat Cory Booker.

A.

Plaintiffs filed their initial complaint in January 2021, alleging claims of false light, defamation, and defamation per se. These claims arose out of the following publications (and others): (1) A Shore News Network (Shore) headline from October 30, 2019, that stated "Obama Era Administrator, Big Pharma Rep Announces Run for U.S. Senate in New Jersey"; (2) a Shore headline from November 21, 2019, stating "Stuart Meissner and Rik Mehta, both running for Senate are newly minted Republicans with deep ties to the Democrat party"; (3) Shore headlines from February 2, 2020, stating "if elected, . . . Mehta, who is challenging Booker says he will protect the opioid supply chain for the pharmaceutical industry," and "pharmaceutical executive . . . Mehta who has come under fire this week for his support of the pharmaceutical industry and easier access to opioid-based prescription drugs"; (4) a Shore headline from February 4, 2020, stating "Somerset County Republicans joined the Union County Republicans in backing pharmaceutical executive [Mehta] who has come under fire this week for his support of the pharmaceutical industry and easier access to opioid-based prescription drugs"; (5) Shore headlines from

4

February 10, 2020, stating "Mehta, [who] worked for opioid producing giant Pfizer and most recently worked for a company that sells Narcan has come under fire in recent weeks over a video that surfaced where he [stated] . . . '[w]e must protect America's opioid supply chain,'" "[Mehta] says we should protect America's opioid supply chain," and "[t]he newly minted Republican with deep campaign pockets and deep ties to the opioid epidemic plaguing New Jersey"; (6) a Shore headline from March 6, 2020, stating "[d]ays earlier, the group, led by its panel of leadership insiders on the screening committee unanimously endorsed . . . Obama era Democrat . . . Mehta for Senate to fulfill their obligation to North Jersey Republicans controlling this year's election statewide"; (7) a Shore headline from April 7, 2020 that stated "Swamp News: Mehta Turns on His Own Democrats; Criticizes Booker, Menendez"; (8) a Singh for Senate release titled "Democrat Judge allows [Mehta] to stay on ballot"; (9) a Shore headline from April 9, 2020 that stated "How Alleged Voter Fraud Almost Kept Former Democrat . . . Mehta Off 2020 Primary Election Ballot" as well as accompanying text from the article quoting Singh stating that Mehta relied on "the voting base of the Democrat Party and Green Party machinery to get on to the ballot prov[ing] . . . he is a pawn of the progressive establishment"; (10) a Singh for Senate release and a Shore headline from April 16, 2020 stating:

A-0409-23

"Mehta's 'N-Word' Problem" with an accompanying photograph of Mehta next to an individual wearing blackface; (11) a Shore headline from May 2, 2020 stating "Hirsh Singh Says Opponent, Former Democrat . . . Mehta Could Endorse Biden, Not Trump if His Ex-Boss is Tapped as Biden VP"; (12) a social media post, dated May 16, 2020, that stated "U[.]S[.] Senate candidate . . . Mehta wants to mandate COVID-19 vaccine to make his other pharmaceutical Democratic opiate peddlers rich!"; (13) press releases by Singh for Senate dated May 26, 2020, accusing Mehta of involvement with prescription drugs related to birth control and stating that Mehta is not pro-life; (14) a May 29, 2020 press release from Singh for Senate describing Mehta as a "Trojan Horse to keep Corey Booker in power"; (15) a statement made by Singh on June 29, 2020, describing Mehta as "a Democrat plant"; (16) a July 1, 2020, Singh for Senate press release accusing Mehta of being a lifelong Democrat; and (17) other press releases and statements by Singh made after the 2020 general election accusing Mehta of voter fraud as well as various other statements by news outlet pundits and social media posts.[2]

---

[2] The press releases and statements have similar themes as those already noted: characterizing Mehta as a Democrat plant who benefitted from voter fraud, has ties to pharmaceutical companies, is pro-opioids and pro-abortion, was embroiled in a racism scandal, and exposed citizens to COVID-19 by failing to quarantine after being exposed to the virus.

6

B.

Defendants moved to dismiss the complaint in lieu of an answer pursuant to Rule 4:6-2(e). The trial court granted the motion in part, dismissing the defamation per se claim but allowing the defamation and false light claims to proceed. In a corresponding written opinion, the court found that plaintiffs had pled a cause of action for defamation and since Mehta was a public figure, a finding of actual malice was necessary to establish the claim, which could not be determined on a Rule 4:6-2(e) motion.

In dismissing the defamation per se claim, the court cited to McLaughlin v. Rosanio, Bailets & Talamo, Inc. 331 N.J. Super. 303, 313-14 (App. Div. 2000), and explained that only four kinds of statements qualify as slander per se: that is, accusing another: "(1) of having committed a criminal offense, (2) of having a loathsome disease; (3) of engaging in conduct or having a condition or trait incompatible with his or her business, or (4) of having engaged in serious sexual misconduct." The court found that plaintiffs' contention that defendants' Facebook post falsely alleged that Mehta was recklessly exposing crowds to COVID-19 while he was campaigning did not amount to defamation per se, "as the statement . . . d[id] not by itself allege that . . . [Mehta] had COVID[-19] or

A-0409-23

any other 'loathsome disease.'" Plaintiffs' subsequent motion for reconsideration of the dismissal of the defamation per se count was denied.

Shortly thereafter, the Federal Election Commission (FEC) issued a ruling in response to a complaint which alleged defendants paid Shore to publish favorable coverage of Singh's campaign, and negative coverage and criticism of Mehta in online articles and on social media, and did not include the proper disclaimers required by the Federal Election Campaign Act (Act) of 1971, 52 U.S.C. §§ 30101 to -30146. The FEC made a finding of no reason to believe with respect to the alleged violations because

> the information in the record before [them] indicated that [Shore's] activities fell . . . under the Act's media exemption . . . [and] therefore [Shore was] not required to append disclaimers to its content, to register as a political committee, or to report in-kind contributions resulting from its favorable coverage of Singh or negative coverage of his opponent. . . . [And] the [c]omplaint failed to present credible evidence that [Shore] and the Singh Committee impermissibly coordinated on communications regulated by the Act.
>
> . . . .
>
> The available information . . . d[id] not indicate that the Singh Committee paid for the articles . . . placed on the [Shore] website. The record d[id] not contain any evidence to substantiate the allegation[s] . . . that the Singh Committee's payments to [another magazine] were for the publishing of . . . articles . . . and not for traditional advertising on the [Shore] website.

8

C.

In May 2023, defendants moved for summary judgment; plaintiffs filed a cross-motion for similar relief.

In a well-reasoned written decision and accompanying orders, the court granted defendants summary judgment and denied plaintiffs' cross-motion. The court cited to Ward v. Zelikovsky, 136 N.J. 516, 528 (1994), and addressed the threshold question of whether the alleged statements were reasonably susceptible to defamatory meanings. The court noted it must scrutinize the language of the statements, giving them their literal meanings as well as a fair and natural reading under an objective reasonable person standard. The court further cited to Lynch v. New Jersey Education Ass'n, 161 N.J. 152, 168-69 (1999), and noted that statements of opinion cannot be proved to be true or false.

Using this framework, the court found the statements made by defendants were not false or defamatory, but rather protected statements of opinion. The court reasoned that the statements constituted "loose, figurative . . . and rhetorical hyperbole that were uttered during an election for public office," and that readers of the statements were able to draw their own conclusions as to whether the opinions were justified. Specifically, the court emphasized that the phrases used, such as "baby killer," "opioid peddler," and "voter fraud" did not

 A-0409-23

make specific accusations of criminal activity but rather, were "pejorative rhetoric even though they m[ight] be considered extreme and vituperous."

The court further found that even if the statements were defamatory and not opinions, plaintiffs' claims would still fail. The court stated plaintiffs had not established actual malice because the record did not "show by clear and convincing evidence that the statements were false or published with reckless disregard for the truth." The court further explained that even though actual malice is a subjective standard, plaintiffs did not assert facts from which a factfinder could conclude that defendants "knew or entertained serious doubts as to the truth of the statements," because defendants "pointed to [their] sources, and failure to investigate all sources does not establish malice" as articulated in Lynch. The court's reasoning applied to both the defamation and false light claims.

## II.

On appeal, plaintiffs contend the trial court erred in dismissing the defamation per se claim under Rule 4:6-2(e) and subsequently granting defendants summary judgment on the remaining claims.

A-0409-23

## A.

We begin with the summary judgment order. We review the trial court's grant or denial of a motion for summary judgment de novo, applying the same standard used by the trial court. Samolyk v. Berthe, 251 N.J. 73, 78 (2022).

Rule 4:46-2(c) provides that a motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." The court must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

"To decide whether a genuine issue of material fact exists, the trial court must 'draw[] all legitimate inferences from the facts in favor of the non-moving party.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (alteration in original) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016)).

Generally, "a statement is defamatory if it is false, communicated to a third person, and tends to lower the subject's reputation in the estimation of the

community or to deter third persons from associating with [them]." Lynch, 161 N.J. at 164-65.

False statements about public officials and public figures must be made with actual malice to be actionable. Ibid. (citing New York Times Co. v. Sullivan, 376 U.S. 254, 279-80 (1964); see also Curtis Publ'g Co. v. Butts, 388 U.S. 130, 154 (1967)). "To satisfy the actual-malice standard, a plaintiff must show by clear and convincing evidence that the publisher either knew that the statement was false or published with reckless disregard for the truth." Id. at 165 (citing New York Times Co., 376 U.S. at 279-80).

"Statements of opinion, like unverifiable statements of fact, generally cannot be proved true or false." Id. at 167. Further, "[a] statement made in the heat of an election contest supplies the paradigm for that commitment to free debate." Id. at 166. "When a candidate enters the political arena, he or she must expect that the debate will sometimes be rough and personal." Ibid. (quoting Harte–Hanks Commc'ns, Inc. v. Connaughton, 491 U.S. 657, 687 (1989)) (internal quotation marks omitted). "Readers know that statements by one side in a political contest are often exaggerated, emotional, and even misleading." Ibid. (citing Milkovich v. Lorain Journal Co., 497 U.S. 1, 32 (1990)).

A-0409-23

Preliminarily, we can dispense of plaintiffs' claims regarding many of the alleged statements and news articles because they were not actually made or published by defendants or their agents. The news outlet responsible for publishing most of the articles cited by plaintiffs in their complaint was Shore, who is not a party to this action.

Here, because Mehta is running for public office, plaintiffs must demonstrate, by clear and convincing evidence, the statements were made with actual malice. As to claims regarding specific press releases made by defendants, the trial court properly determined that the statements constituted opinion and hyperbole and therefore cannot be proven true or false. See Lynch, 161 N.J. at 167.

Mehta was involved in a controversy concerning an advisor who used the "N-word" on video and a dispute involving his petition signatures. The statement that Mehta was a "Democrat" who "rigged the election" is also properly read as opinion and hyperbole. Finally, while offensive, the image in the press release did not show Mehta in blackface but rather juxtaposed his picture next to a caricature of a person in blackface.

Plaintiffs' assertions that defendants stated Mehta promoted opioid use, abortion, and would mandate the COVID-19 vaccine if elected can similarly be

A-0409-23

described as opinion and hyperbole. Mehta was employed by Pfizer as the head of its regulatory affairs department. Even if Mehta was not directly responsible for the approval of certain products mentioned in the press release, defendants had a factual basis to associate Mehta with Pfizer at the time the drugs were promoted. Readers were free to make their own decisions on the veracity of the statements.

The press releases issued by defendants were on Singh for U.S. Senate letterhead and began with language such as "Singh is strongly condemning . . . Mehta," clearly evidencing Singh's opinion. Moreover, plaintiffs have not demonstrated that defendants "fabricate[d] a story, publishe[d] one that is wholly unbelievable, or relie[d] on an informant of dubious veracity, or purposely avoid[ed] the truth." Id. at 165.

We turn to Mehta's false light claim. To establish the claim, a plaintiff must show:

> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
>
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.
>
> [Romaine v. Kallinger, 109 N.J. 282, 294 (1988) (quoting Restatement (Second) of Torts, § 652E) (Am. L. Inst. 1977).]

14

"A false light claim against a public official [is] similar to a defamation claim [in that they both] utilize[] the actual malice standard." DeAngelis v. Hill, 180 N.J. 1, 19 (2004). In light of our determination that plaintiffs have not proven actual malice, we are satisfied the trial court properly dismissed the false light claim.

## B.

We now address the order dismissing the defamation per se claim. Our review of a "Rule 4:6-2(e) motion[] to dismiss for failure to state a claim upon which relief can be granted" is de novo. Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 171 (2021) (citing Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 108 (2019)). In considering a Rule 4:6-2(e) motion, "[a] reviewing court must examine 'the legal sufficiency of the facts alleged on the face of the complaint,' giving the plaintiff the benefit of 'every reasonable inference of fact.'" Ibid. (quoting Dimitrakopoulos, 237 N.J. at 107). The test for determining the adequacy of a pleading is "whether a cause of action is 'suggested' by the facts." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989) (quoting Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 192 (1988)). Notwithstanding this standard, "if [a] complaint

A-0409-23

states no claim that supports relief, . . . the action should be dismissed." Dimitrakopoulos, 237 N.J at 107.

Mehta alleges defendants recklessly and maliciously fabricated a story during the COVID-19 pandemic that Mehta was exposed to COVID-19 at the Conservative Political Action Conference (CPAC) in 2020 and then campaigned among at-risk people without first quarantining.

"The terms 'libel per se' and 'libel per quod' have long been used to differentiate between writings defamatory on their face and those defamatory solely in the light of extrinsic facts." Lawrence v. Bauer Publ'g & Printing, 89 N.J. 451, 459 (1982). A finding of libel per se means that as a matter of law "the statements were not reasonably susceptible of a nondefamatory interpretation." Ibid.

The record confirms that Mehta posted a picture of himself on social media in February 2020 indicating that he was at CPAC. The caption of the post read "[a]lways great to be #jerseyproud in Washington! #cpac2020." Therefore, he represented that he attended the conference. Defendants relied on the representation in making their comments. Because the article had a factual basis—Mehta's own post—plaintiffs cannot sustain an action of defamation per

16

se. Therefore, the trial court correctly dismissed the count.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division